IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION


SHARON WEST                                                                               PLAINTIFF

V.                                                              CIVIL ACTION # 2:07cv12-KS-MTP

UNUMPROVIDENT AND
UNUM LIFE INSURANCE COMPANY OF
AMERICA                                                                                 DEFENDANTS


**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on the motion for summary judgment [# **18**] filed by the Plaintiff, and the motion for summary judgment or, alternatively, motion for judgment on the administrative record [# **21**] filed by the Defendants. Because the Plaintiff has failed to produce any evidence establishing a genuine issue of material fact that the ERISA plan administrator abused its discretion in violation of federal law, the motion for summary judgment or, alternatively, judgment on the administrative record [# **21**] is **granted** and the motion for summary judgment [# **18**] is **denied**.


FACTUAL BACKGROUND

Sharon West ("West") was employed as a clinical psychiatrist with Forrest General Hospital in Hattiesburg ("Forrest General"). While at Forrest General, West enrolled in Forrest General's Long-Term Disability Plan ("the Plan"). Forrest General funded its plan by purchasing a group long-term disability insurance policy, No. 519374, from Unum Life Insurance Company

1

of America ("Unum Life").  The Plan defines disability as follows.

> You are disabled when Unum determines that:
>
>> -you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
>>
>> -you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.
>
> After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.[1]

During her employment at Forrest General, West was responsible for all federally funded patient groups.  Her job involved interacting with patients, families, and visitors of all ages, while overseeing quality assurance and regulatory compliance for her department.  Physically, her job required sitting and walking throughout the day, as well as constant listening and strong communication skills.  Because West's job as a psychiatrist was highly skilled, she was permitted positional and postural changes among sitting, standing, and walking as needed.

On November 11, 2004, West submitted a claim for long term disability benefits under the Plan to Unum Life.  West claims her disability began around June 22, 2004. The attending physician's statement submitted with her initial claim form attributed her disability to Sjogren's

---

[1]The policy defines the following additional terms in bold print, as follows:

**MATERIAL AND SUBSTANTIAL DUTIES** means duties that:
- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Unum will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

**REGULAR OCCUPATION** means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

Syndrome, an autoimmune disorder in which immune cells attack and destroy the glands that produce tears and saliva.  However, the evaluation of her claim by Unum Life ultimately involved consideration of a number of other conditions, including Sjogren's Syndrome, fibromyalgia, osteoporosis, arthritis, hypothyroidism, osteoarthritis, and bi-polar disease

Unum Life initially approved West's claim primarily based upon her report of experiencing severe headaches believed to be caused by a tumor.  West underwent surgery to remove the tumor on November 23, 2004.  After the 180-day elimination period, Unum Life paid West a monthly benefit from December 20, 2004, through February 19, 2005.  Thereafter, Unum Life continued to pay West the monthly benefit under a reservation of rights while it continued its investigation of her claim of continued disability.

Unum Life subsequently determined that West was not disabled within the meaning of the Plan and denied her claim on June 14, 2006. West appealed this denial on July 14, 2006.  Fo1lowing additional investigation, Unum Life upheld its claim denial on November 20, 2006.  This lawsuit followed.

Unum Life's denial of benefits to West was premised on a substantial medical record developed while her claim was pending.  The Court has considered the administrative record submitted by Unum Life under seal.  Because the record exceeds 1400 pages, only medical reports most relevant to the pending motions are summarized below.

Eric Hale, M.D., a family practice physician, was the first attending physician to work with West.  In the initial paperwork for her claim, Dr. Hale diagnosed West with Sjorgren's Syndrome and said that she suffered from "fatigue, myalgias, [and] headaches" that "require[d] frequent rest during the day."  Following the removal of a synovial cyst, Dr. Hale updated his

attending physician's statement, noting that West "cannot sit or stand for periods in excess of four hours, cannot drive long distances, has difficulty concentrating and cannot perform duties required of psychiatrists."

On May 2, 2005, Dr. Hale spoke by telephone with Christine Davis at Unum Life. Elaborating on his earlier diagnosis of West, Dr. Hale stated that "the limitations regarding [West's] inability to sit or stand for periods in excess of one hour, or difficulty concentrating, are symptoms that are reported to me by the patient herself." Dr. Hale stated that he "does not see anything objectively that constitutes a disability."

On July 14, 2005, Clint Hudson, P.T., performed a functional capacity examination ("FCE") on West. At the time of the examination, Hudson stated that "based on this evaluation, the client is incapable of sustaining the light level of work for an eight hour work day." But when contacted regarding this report in April of 2006, Hudson also elaborated on his earlier opinions. During that conversation, Hudson stated that West "can safely perform sedentary work with positional changes at least every hour."

After Hudson's initial report, West independently sought evaluation by another physician. On August 5, 2005, Billy Mack Pickering, M.D., examined West. Dr. Pickering concluded that the sum of West's ailments made her "unable to work in any capacity." Despite being submitted with conflicting medical evidence and reports by Unum Life, Dr. Pickering maintained throughout the course of her claim that West was disabled.

Following considerable delay, West agreed to undergo an independent medical examination scheduled by Unum Life. On January 26, 2006, Martin L. Rohling, Ph.D., a clinical psychologist, performed an independent evaluation of West. Dr. Rohling concluded that West

"retains the requisite cognitive ability necessary to work competently as a physician" and that the medical problems of West "appear to fall more in the mild range of severity than is typical."

After the exam by Dr. Rohling, Umum Life had several medical experts review the records of West. On May 15, 2006, Tony D. Smith, D.O., a medical consultant to Unum Life, reviewed her file for a medical claim analysis. Dr. Smith concluded that he could "find no objective medical data in the current record that supports a complete lack of work capacity." Dr. Smith further noted that the "activities documented during the FCE and IME [are] inconsistent with Dr. Pickering's 08.05.05 statement of 'unable to work in any capacity.'"

On June 7, 2006, Gary P. Greenwood, M.D., a physician board certified in internal medicine and infectious diseases, reviewed the medical file of West. Dr. Greenwood concluded that "from a physical perspective, the claimant's alleged Sjogren's Syndrome, mild degenerative disk and joint findings, and treated hypertension and hypothyroidism would not preclude sedentary work."

After the reviews of Dr. Greenwood and Dr. Smith, Unum Life had West's file reviewed by R. A. Hill, M.D., a physician board certified in family practice and sports medicine. Dr. Hill wrote that he was unable to see "any specific clearer etiology that ties together Dr. West's various complaints." He further stated that "it is my opinion within a reasonable degree of medical certainty that the medical evidence supports that Dr. West has the capacity for sustained activity at the light/sedentary level." Dr. Hill recommended that West be sent to a rheumatologist for further evaluation.

On October 24, 2006, Nirupa Mohandas, M.D., a rheumatologist, performed an independent medical exam of West while her claim was on appeal. Dr. Mohandas reported that

"from the point of view of her physical exam she should be capable of performing at least mild/sedentary work or even more." Dr. Mohandas further stated that West's "mental faculties were also normal" and that "with regards to Fibromyalgia-because of depression, migraine and chronic pain issues she could still probably perform light/sedentary work."

During the appellate review of West's claim, D. Malcolm Spica, Ph.D., a clinical neuropsychologist, also reviewed the medical record of West. Dr. Spica reported that "I do not find to a reasonable degree of professional certainty that Dr. West's psychiatric or neurocognitive features rose to the level of impairment. Restrictions and limitations based on psychiatric dysfunction are not warranted."

In total, as many as eight medical experts expressed opinions supporting Unum Life's decision. These reviewing experts included a family physician, a clinical psychologist, a physical therapist, an internist, a clinical neuropsychologist, a sports medicine physician, and a rheumatologist.

West filed the underlying suit on January 16, 2007, for wrongful failure to pay disability benefits in violation of federal law. On July 31, 2007, both sides submitted motions for summary judgment. Because the Plaintiff and Defendant have both moved for summary judgment on the same issue, the Court will consider the motions concurrently.

## STANDARD OF REVIEW

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(c). To support a motion for summary judgment, "the moving party ... [has] the burden of showing the absence of a genuine issue as to any material fact." *Burleson v. Tex. Dept. of Criminal Justice,* 393 F.3d 577, 589 (5th Cir 2004).

If the movant satisfies its initial burden, then the burden shifts back to the nonmoving party to produce evidence indicating that a genuine issue of material fact exists for each essential element of its case. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003). The nonmovant is not entitled to merely rest on her pleadings, but must set forth "specific facts showing there is a genuine issue for trial." *DirecTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

In evaluating a motion for summary judgment, the court views all evidence "in the light most favorable to the non-moving party" and "draw[s] all reasonable inferences in its favor." *Breen v. Texas A&M Univ.*, 485 F.3d 325, 331 (5th Cir. 2007). A motion for summary judgment cannot be granted simply because the opposing party has failed to respond. *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1995). The movant still carries the burden of establishing the absence of any genuine issue of material fact. *See Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995).

The Employee Retirement Income Security Act of 1974 ("ERISA") provides federal courts with jurisdiction to review determinations made under employee benefit plans. 29 U.S.C. § 1132(a)(1)(B). Where a benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the district court is limited to reviewing its decisions to limit or deny benefits under an abuse of discretion standard. *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 269 (5th Cir. 2004). This standard of review

applies to an initial denial of benefits as well as to a termination of benefits after an initial determination of eligibility. *Matney v. Hartford Life & Accident Ins. Co.*, 172 Fed. Appx. 571, 572 (5th Cir. 2006).

Under the abuse of discretion standard, the court must uphold the administrator's decision if it is supported by substantial evidence and is not arbitrary and capricious. *Matney*, 172 Fed. Appx. at 572; *Ellis*, 394 F.3d at 273. "Substantial evidence" has been defined as "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis*, 394 F.3d at 269. In other words, the administrator's decision must "fall somewhere on a continuum of reasonableness–even if on the low end." *Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999). Nevertheless, the decision to deny benefits must be "based on evidence, even if disputable, that clearly supports the basis for its denial." *Id* at 299. A decision is arbitrary when there is "no rational connection between the known or found facts and the evidence in the record." *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 2002).

The court considers any potential conflict of interest in the abuse of discretion inquiry. *Matney*, 172 Fed. Appx. at 572-73. The conflict does not change the underlying standard, but requires the court to reduce the amount of deference it provides the administrator's decision. *MacLachlan v. ExxonMobile Corp.*, 350 F.3d 472, 478 (5th Cir. 2003). The amount of deference given to the administrator is abrogated by the extent to which the challenging party has substantiated its claim of a conflict. *Id.* at 479; *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburg,* 215 F.3d 516, 521 (5th Cir. 2000). When the insurer and administrator are the same entity, the administrator is "'entitled to all but a modicum' of the deference afforded to an

unconflicted administrator." *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 395 (5th Cir. 2006). The administrator's decision would then be upheld if there is "some concrete evidence in the administrative record." *Vega*, 188 F.3d at 302; *Gooden v. Provident Life & Acc. Ins. Co.*, 250 F.3d 328, 334 (5th Cir. 2001).

The plaintiff has the burden of proving that the decision to terminate their long-term disability benefits constituted an abuse of discretion. *Kirchenheuter v. Bd. of Trustees*, 341 F. Supp. 2d 624, 628 (S.D. Miss. 2004); *Haley v. Metro. Life Ins. Co.*, 189 F. Supp. 2d 567, 573 (S.D. Miss. 2001). In applying the abuse of discretion standard, the court is limited to the administrative record which "consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Matney,* 172 Fed. Appx. at 573; *Vega*, 188 F.3d at 300.

## APPLICATION AND ANALYSIS

In the instant case, Unum Life insures the Plan and is also solely responsible for making benefits determinations. Because the defendant wears both hats, there is a potential conflict of interest in that Unum Life "potentially benefits from every denied claim." *Ellis*, 188 F.3d at 295. Therefore, the court must apply a "sliding scale standard" in reviewing Unum Life's decision, giving less deference to the administrator in proportion to the administrator's apparent conflict. *Vega*, 188 F.3d at 299; *Matney*, 172 Fed. Appx. at 573.

In addition to these dual roles, West alleges three additional areas of bias on the part of Unum Life. The Court finds these allegations unpersuasive.

First, West alleges that Unum Life has manipulated the description of her job requirements in order to find her able to perform them. West claims that Betty Morris, a rehabilitation consultant who completed an occupational analysis report of West's job, improperly considered information outside of the job description provided by her employer. Although West alleges this amounts to a bias against her claim, the information crafted by Morris appears to have been based both on the description provided by Forrest General and on descriptions located in the enhanced Dictionary of Occupational Titles. The terms of the Plan allowed the administrator to consider West's occupation of Psychiatrist "as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer." The conclusion that the physical requirements of West's job are "sedentary" does not demonstrate any bias against West or her claim sufficient to adjust the sliding scale of deference.

Second, West alleges that bias is exhibited by one physician's opinion of her visual acuity issues. Yet simply because that physician found "no objective medical data in current records" to support her claimed disability does not mean that the physician was biased. It is unclear how a differing medical opinion, based on consideration of the same evidence, alone can support a claim of bias. This is particularly true when viewed in context of the cumulative medical evidence submitted by Unum Life.[2]

---

[2]When medical evidence conflicts to a greater degree, district courts in other circuits have seen the level of internal conflict as evidence of bias necessary to reduce the amount of discretion given the plan administrator. *See, e.g.*, *Lasser v. Reliance Standard Life Ins. Co.*, 130 F. Supp. 2d 616, 625-26 (D.N.J. 2001). In *Lasser*, the district court looked at a much thinner medical record arguing against disability versus a more developed and detailed critique of that record favoring a finding of disability for a physician. In considering how the decision to deny benefits would be reviewed, the district court noted that perceived bias might make the court "lessen the deference normally attributed to the administrator's decision, heighten the degree of scrutiny to match the degree of conflict, and, in all likelihood, reverse the decision below." The *Lasser* burden shifting based on bias is inapposite to West's claim, however, because the administrator's decision is based on substantially more medical evidence.

Finally, West alleges bias based on the way Unum Life has responded to how medication affects her ability to work. Specifically, she argues that her need for Demerol both renders her disabled and evidences bias on the part of Unum Life because it does not agree that the medication creates a disability. Besides finding no factual support in the administrative record, her claim of bias is again just a reshuffling of her fundamental claim that Unum Life wrongfully determined her able to perform her job. The mere disagreement among medical professionals (or better stated, the agreement among medical professionals that West is mistaken) is not itself evidence of bias to force the district court to further slide the scale away from deference toward the plan administrator.[3] In short, because there is no other evidence of a conflict other than Unum Life's position as the insurer and also as the one determining eligibility for benefits, the court will afford Unum Life's decision "only a modicum less deference" than it would otherwise. *Matney*, 172 Fed. Appx. at 573.

Reviewing the decision of the plan administrator with slightly less deference than given an unconflicted administrator, the Court determines that there is easily enough concrete evidence on the administrative record to support a denial of benefits. Unum Life's decision rests on

---

[3]In *Pinto*, the Third Circuit looked at a similar case and took the opposite view. *See Pinto v. Reliance Life Insurance Standard Co.*, 214 F.3d 377, (3d Cir. 2000). The appeals court in *Pinto* looked at a decision to deny benefits based a record with two doctors who found a disability and two doctors who did not find a disability. *Id*. at 393. The court found it significant that medical evidence indicating disability had been ignored, while evidence indicating a lack of disability had been cherry-picked from the very same medical reports that concluded a disability existed. *Id*. Further, the physicians who argued against disability were improperly credentialed to make that determination when compared to those physicians that found a disability. *Id*. In short, the combination of a thin record, selective review of evidence, and internal inconsistencies led the *Pinto* court to slide the scale of deference in light of perceived bias. *Id*. Though West has attempted a similar showing, her case for bias falls short for several reasons. First, the record supporting Unum Life's decision is substantially more developed, and includes a myriad of different medical experts properly credentialed to look at her numerous ailments. Second, there is no record of selective fact consideration as presented in *Pinto*. Finally, the administrator in *Pinto* went against internal policies in denying her claim when further testing was requested, while West's claim received additional reviews and evaluations, both when requested and as a matter of course. To the extent that West makes a case under any persuasive authority available from *Pinto*, the Court finds the facts of her case inadequate.

numerous specialized medical professionals who evaluated her and or reviewed her records during the course of her application and appeal. These experts are in near unanimous agreement that West's physical and mental competence are sufficient to perform the material duties of her occupation as a psychiatrist.

West appears to misapprehend the burden of proof under ERISA. Although some evidence does support the position of West that she is disabled, that is not sufficient to meet her evidentiary burden and overturn the decision of the administrator. It is important to keep in mind that "[t]he law requires only that substantial evidence support a plan fiduciary's decisions...not that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability." *Ellis*, 394 F.3d at 273.

Further, even though Dr. Pickering maintained that West was disabled, the Court does not afford any special deference to Dr. Pickering's opinion as the treating physician above that of other qualified medical experts. *Gothard v. Metro. Life Ins. Co.*, 491 F.3d 246, 249 (5th Cir. 2007). As the Supreme Court recently instructed, the district court has "no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Indeed, numerous courts have upheld administrators' decisions where the administrator chose to rely upon medical opinions from doctors other than treating physicians, even from doctors selected by the administrator to review the claim. *See, e.g., Chandler v. Hartford Life*, 178 Fed. Appx. 365, 369 (5th Cir. 2006); *Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 233 (5th Cir. 2004).

The Court finds a helpful analogy from the recent Fifth Circuit case *Corry v. Liberty Life Assur. Co. of Boston*, 2007 WL 2420720 (5th Cir. Aug. 28, 2007). The plaintiff in *Corry* presented physicians with a litany of subjective medical complaints that were not easily verifiable. When her claim was denied, the plaintiff in *Corry* brought suit, principally on the basis that the plan administrator had wrongfully disregarded her subjective ailments. The district court granted summary judgment in her favor, arguing that the plaintiff's subjective complaints should be given more weight than was afforded by the plan administrator. The appeals court reversed, with instructive language reproduced below:

> It seems indisputable that the medical opinions of Liberty's three consulting physicians, each of whom are specialists and qualified experts in fields specifically related to Corry's symptoms, constitute substantial evidence supporting Liberty's determination that Corry has no disability that would preclude her from performing sedentary work. We might well assume, as the district court essentially did, that the totality of Corry's subjective complaints could suffice to establish substantial evidence of disability; nevertheless, "[t]he law requires only that substantial evidence support a plan fiduciary's decisions, including those to deny or to terminate benefits, not that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability." Only recently have we once again emphasized that an administrator does not abuse its discretion by relying on the medical opinions of its consulting physicians instead of the medical opinions of a claimant's treating physicians. (internal citations omitted).

*Corry v. Liberty Life Assur. Co. of Boston*, 2007 WL 2420720 at *11 (5th Cir. Aug. 28, 2007).

In the instant case, West has advanced similar arguments. She argues that the opinions of Dr. Pickering and, to a lesser extent, Dr. Hale "constitute reliable evidence which cannot be ignored." Even if the Court were to find that their records constitute substantial evidence of disability, that would not help West survive summary judgment. Unum Life has submitted more than enough evidence to support their denial of benefits for the court to determine that there is "concrete evidence in the administrative record" sufficient to uphold the decision.

## **CONCLUSION**

The Plaintiff has failed to establish the existence of any genuine issue as to a material fact to preclude summary judgment. The Defendants have submitted sufficient concrete evidence in the administrative record for the Court to conclude that the denial of benefits did not amount to an abuse of discretion by the plan administrator.

IT IS THEREFORE ORDERED AND ADJUDGED that the Defendant's motion for summary judgment or, alternatively, judgment on the administrative record [# **21**] is **granted**.

IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff's motion for summary judgment [# **18**] is **denied**.

SO ORDERED AND ADJUDGED this 24th day of September, 2007.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE